**SO ORDERED.**

**SIGNED this 20 day of May, 2019.**

_____

**David M. Warren**
**United States Bankruptcy Judge**

___

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: <br><br> **ROBERT L. DAWSON FARMS, LLC** <br><br> DEBTOR | **CASE NO. 18-02433-5-DMW** <br><br> **CHAPTER 11** |
| **ROBERT L. DAWSON FARMS, LLC** <br><br> PLAINTIFF <br><br> vs. <br><br> **MEHERRIN AGRICULTURAL & CHEMICAL COMPANY** <br><br> DEFENDANT and <br> THIRD-PARTY PLAINTIFF <br><br> vs. <br><br> **DREXEL CHEMICAL COMPANY and AMERICAN WAREHOUSING SYSTEMS, INC.** <br><br> THIRD-PARTY DEFENDANTS | **ADVERSARY PROCEEDING NO.** <br><br> **18-00127-5-DMW** |

**ORDER DISMISSING CLAIMS FOR RELIEF**

This matter comes before the court upon the Motion to Dismiss and Motion for Judgment on the Pleadings ("Rule 12 Motion") filed by Meherrin Agricultural & Chemical Company ("Defendant") on February 4, 2019 and the Response filed by Robert L. Dawson Farms, LLC

("Plaintiff") on March 4, 2019. The court conducted a hearing on March 28, 2019 in Raleigh, North Carolina. Michael R. Spitzer II, Esq. appeared for the Defendant; Matthew W. Buckmiller, Esq., Landon G. Van Winkle, Esq., and Joseph Z. Frost, Esq. appeared for the Plaintiff; and Brian M. Love, Esq. appeared for Drexel Chemical Company ("Drexel").[1]

This proceeding presents the unique question of whether a debtor which is the surviving entity to a pre-petition corporate merger may avoid as preferential a transfer made by a merged company prior to the merger. After consideration of applicable law and the arguments of counsel, the court concludes that it may not and dismisses the Plaintiff's two claims for relief related to this issue.

## BACKGROUND

The Plaintiff filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code[2] on May 14, 2018 ("Petition Date") and is operating as a debtor-in-possession pursuant to § 1107. On the eve of the Petition Date, the Plaintiff and William Earl Dawson Farms, LLC ("WED Farms") executed documents purporting to merge the separate limited liability companies. The Plaintiff became the surviving entity, and WED Farms was dissolved.

Prior to the Plaintiff's bankruptcy petition and purported merger with WED Farms, on or about April 11, 2017, WED Farms, William Earl Dawson, Pamela Reade Dawson, Robert L. Dawson, and Kelli J. Dawson executed jointly a Line of Credit and Security Agreement ("Note") in favor of the Defendant for the maximum principal amount of $550,000.00. The Note grants the Defendant a security interest in the executing parties' inventory, equipment, farm products, and livestock ("Collateral"). Almost a year later, on March 8, 2018, the Defendant perfected its

---

[1] Drexel is a third-party defendant in this adversary proceeding as to claims for relief not subject of the Rule 12 Motion, and Mr. Love appeared only to observe.

[2] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

security interest in the Collateral by recording a UCC Financing Statement with the North Carolina Secretary of State.

On June 8, 2018, the Defendant filed a Proof of Claim in the Plaintiff's bankruptcy case for the secured amount of $584,485.52 ("Claim 2") due on the Petition Date under the Note. The Defendant filed a separate Proof of Claim for the secured amount of $220,386.59 ("Claim 3") due on the Petition Date under a line of credit issued upon a Credit Application executed jointly on March 21, 2011 by WED Farms, William Earl Dawson, and Pamela Reade Dawson and subsequently secured by the Collateral pursuant to the terms of the Note. The Proofs of Claim include notations that the basis of Claim 2 and Claim 3 (collectively "Claims") is that WED Farms transferred the Collateral to the Plaintiff subject to a perfected lien.

On December 4, 2018, the Plaintiff initiated this adversary proceeding by filing a Complaint against the Defendant setting forth eight claims for relief, including the following: avoidance of the Defendant's lien on the Collateral as a preferential transfer pursuant to § 547(b) ("First Claim for Relief"); objection to the Claims pursuant to § 502(b) ("Second Claim for Relief"); and declaratory judgment pursuant to 28 U.S.C. § 2201(a)[3] that any and all claims of the Defendant are secured solely by a Unverferth 2755 Seed Cart[4] and are unsecured for amounts exceeding the fair market value of this seed cart ("Third Claim for Relief"). The remaining five claims for relief ("Product Liability Claims for Relief") are product liability causes of action related to the Plaintiff's purchase of a chemical from the Defendant.

---

[3] This codified remedy provides that—
[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201(a).

[4] The Plaintiff does not dispute the validity of a perfected purchase money security interest in the seed cart granted to the Defendant by WED Farms, William Earl Dawson, and Robert L. Dawson in May 2017.

3

On February 4, 2019, the Defendant filed an Answer to Complaint and Third-Party Complaint which answered the Plaintiff's allegations contained in the Complaint, asserted various defenses to the Plaintiff's claims for relief, and initiated third-party claims for relief against Drexel and American Warehousing Systems, Inc. ("AWS"). With the third-party claims for relief, the Defendant seeks contribution and indemnity from Drexel and AWS for any liability of the Defendant to the Plaintiff under the Product Liability Claims for Relief.

The Defendant filed the Rule 12 Motion simultaneously with its Answer, requesting dismissal of the First, Second, and Third Claims for Relief pursuant to either Rule 12(b)(6) or Rule 12(c) of the Federal Rules of Civil Procedure.[5] At the hearing, the Defendant acknowledged that the Second Claim for Relief was partly dependent on the Product Liability Claims for Relief not part of the Rule 12 Motion and conceded that dismissal of the Second Claim for Relief is premature.

## DISCUSSION

### Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

### Standard of Consideration

Rule 12(b)(6) provides a defense for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "In considering

---

[5] Made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). To survive the Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court "must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Generally, a motion for any defense enumerated in Rule 12(b) must be made before an allowed responsive pleading, usually an answer, is filed; however, Rule 12(h)(2) allows a party to raise the defense of failure to state a claim upon which relief can be granted by a motion under Rule 12(c). Rule 12(c) provides that "*[a]fter the pleadings are closed* – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) (emphasis added).

When a defendant has filed an answer, a Rule 12(b)(6) motion "should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted." *Edwards*, 178 F.3d at 243 (citing *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986)). However, as a practical matter—

> a Rule 12(c) motion is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Like a Rule 12(b)(6) motion, "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Unlike on a Rule 12(b)(6) motion to dismiss, however, on a motion for judgment on the pleadings, the Court may also consider the Answer. *Alexander v. City of Greensboro*, 801 F.Supp.2d 429, 433 (M.D.N.C. 2011). The factual allegations contained in the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Jadoff v. Gleason*,

5

> 140 F.R.D. 330, 331 (M.D.N.C. 1991). Because the plaintiff is not required to reply to the Answer, "all allegations in the [A]nswer are deemed denied." *Id.* at 332. "[D]ocuments attached to the Answer are part of the pleadings for Rule 12(c) purposes, and may be considered." *Mendenhall v. Hanesbrands, Inc.*, 856 F.Supp.2d 717, 724 (M.D.N.C. 2012).

*Action NC v. Strach*, 216 F. Supp.3d 597, 613 (M.D.N.C. 2016).

Although the Defendant answered the Plaintiff's Complaint, the Plaintiff argues that judgment on the pleadings is not appropriate, because the pleadings are not closed in this adversary proceeding. Specifically, at the time of the hearing on the Rule 12 Motion, neither Drexel nor AWS had answered the Defendant's third-party claims for relief asserted against them. The Defendant counters that the third-party action does not involve the First, Second, and Third Claims for Relief that are subject of the Rule 12 Motion; therefore, the pleadings are closed as to these causes of action. The court agrees with the Defendant. This precise issue was persuasively addressed by the United States District Court for the Southern District of New York:

> Plaintiff's contention that defendant's motion for judgment on the pleading is premature because the pleadings are not closed is without merit. Joinder of issue between these two parties requires only the filing of a complaint and an answer. Both have been filed. Since a grant of this motion would not dispose of [plaintiff's] entire cause of action against [defendant], [defendant's] impleader action for indemnity from the third party remains unaffected. The third-party action is thus irrelevant to defendant's motion.

*Starmakers Publ'g Corp. v. Acme Fast Freight, Inc.*, 615 F. Supp. 787, 790 (S.D.N.Y. 1985).

Following, the court will treat the Rule 12 Motion as a motion for judgment on the pleadings.

<u>Preferential Transfers</u>

The law of preferences is a quintessential protection in bankruptcy and allows a trustee[6] to—

> avoid any transfer of an interest of the debtor in property—

---

[6] The Plaintiff, as a debtor-in-possession, has all the rights of a trustee under § 547(b). *See* 11 U.S.C. § 1107(a).

6

    (1)  to or for the benefit of a creditor;

    (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3)  made while the debtor was insolvent;

    (4)  made—

        (A)  on or within 90 days before the date of the filing of the petition; or

        (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5)  that enables such creditor to receive more than such creditor would receive if—

        (A)  the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extend provided by the provisions of this title.

11 U.S.C. § 547(b). The Bankruptcy Code's definition of "transfer" includes "the creation of a lien." 11 U.S.C. § 101(54)(A). In its Complaint, the Plaintiff alleges that it created a lien on the Collateral when it executed the Note through its predecessor in interest which is WED Farms. The Defendant denied this allegation, asserting that the Note is a written document that speaks for itself.

At the hearing, the parties agreed that WED Farms granted the Defendant a security interest in the Collateral ("Transfer"). Assuming WED Farms filed its own bankruptcy petition on May 14, 2018, the Transfer on March 8, 2018[7] would likely qualify as an avoidable preferential transfer under § 547(b). The Defendant disputes, however, that the Plaintiff can avoid the Transfer, because regardless of any merger of WED Farms into the Plaintiff, the Transfer does not meet the threshold requirement of being a "transfer of an interest of the debtor in property."

---

[7] This is the date the Defendant perfected its security interest in the Collateral and is the effective date of the Transfer. It is well-settled that the transfer of a lien or security interest that is not perfected timely is deemed have been made at the time of perfection. *See* 11 U.S.C. § 547(e)(2); *In re Millerburg*, 61 B.R. 125, 127 (Bankr. E.D.N.C. 1986) (finding that for purposes of § 547(b), a transfer is not made until it is perfected).

At the outset of the hearing, the court questioned the legitimacy of the Plaintiff's asserted merger with WED Farms, and documents attached to the Complaint and the Answer suggest that the parties did not comply properly with the requirements for merger of North Carolina limited liability companies set forth in N.C. Gen. Stat. § 57D-9-40 *et seq.*  The Defendant argues that Plaintiff's allegation that it merged with WED Farms is a conclusion of law that the court need not accept as true.  The court disagrees and believes the existence of a merger, while dependent on state law, to be a question of fact for purposes of its analysis under § 547(b).  The Plaintiff may be able to prove a merger or perhaps a *de facto* merger at trial; therefore, viewing the Complaint in the light most favorable to the Plaintiff, the court will accept the merger allegation as true. *See TD Bank, N.A. v. Mirabella*, 219 N.C. App. 505, 511-12, 725 S.E.2d 29, 33 (2012) (holding that court did not need to take judicial notice of a bank merger and that existence of merger was a disputed finding of fact precluding summary judgment).

Historically, upon corporate merger in North Carolina, the surviving corporation becomes vested with all the rights, privileges, powers, and franchises of each merged corporation and can exercise any rights which a party to the merger could exercise. *Good Will Distribs. (N.) v. Shaw*, 247 N.C. 157, 159, 100 S.E.2d 334, 335 (1957) (citing N.C. Gen. Stat. § 55-166 (repealed)).  The wording of current statutes regarding the effects of the merger of corporations and limited liability companies is a bit more limiting, and with respect to limited liability companies like the Plaintiff, "[t]he title to all real estate and other property owned by each merging entity is vested in the surviving entity without reversion and impairment." N.C. Gen. Stat. § 57D-9-43(a)(2) (2014). North Carolina courts have interpreted the virtually identical N.C. Gen. Stat. § 55-11-06(a)(2)[8] pertaining to corporations to provide a surviving corporation with contractual rights held by a

---

[8] "The title to all real estate and other property owned by each merging corporation is vested with the surviving corporation without reversion or impairment." N.C. Gen. Stat. § 55-11-06(a)(2) (2018).

8

merged corporation. *See*, *e.g.*, *In re Foreclosure of N.C. Deed of Trust by Carver Pond I L.P.*, 217 N.C. App. 352, 356, 719 S.E.2d 207, 211-12 (2011) (holding that a surviving corporation succeeded by operation of law to a lender's status as holder of promissory note); *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp.2d 705, 713-14 (2009) (finding that under North Carolina law, a corporation may enforce a non-competition agreement executed by an employee of a merged entity). The Plaintiff advances a similar contention that as the surviving entity of a merger between it and WED Farms, it may avoid as preferential the Transfer made by WED Farms prior to the merger. The court disagrees.

When the assumed merger between the Plaintiff and WED Farms occurred, WED Farms had not filed a bankruptcy petition. WED Farms held no cause of action under § 547(b) against the Defendant to which the Plaintiff could succeed as the surviving entity to the merger. The surviving Plaintiff filed for bankruptcy relief the day following the merger and is the "debtor" within the meaning of § 101(13). Although WED Farms may be absorbed into the Plaintiff, it is not the debtor in this case. The court finds this distinction analogous to the United State Supreme Court's holding that the surviving corporation of a merger may not claim a tax deduction for a loss sustained by a merged entity, because the company claiming the loss was not the "taxpayer" within the meaning of the relevant federal tax statutes. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, (1934)

As a result of the purported merger, the Plaintiff had title to and possession of the Collateral on the Petition Date, but it did not effectuate the pre-petition Transfer or have any interest in the Collateral at the time of the Transfer. The Defendant contends, therefore, that the Transfer was not a transfer of "an interest of the debtor in property." The Bankruptcy Code does not define this phrase, which was added to § 547(b) by the Bankruptcy Amendments and Federal Judgeship Act

of 1984 to replace "property of the debtor". The United States Supreme Court interpreted "property of the debtor" under the prior version of the statute as follows:

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

*Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990). The Plaintiff correctly observes that the value of the Defendant's security interest in the Collateral would be part of its bankruptcy estate had WED Farms not made the Transfer. The court notes additionally that the current requirement that the transfer be of "an interest of the debtor in property" seems more expansive than "property of the debtor" interpreted by the Supreme Court, and § 547(b) does not require that the debtor be the transferor. Both factors support the Plaintiff's position, yet the prospect of allowing avoidance of a transfer that in no way involved the debtor or the debtor's property at the time of the transfer is illogical.

The Plaintiff presents a novel theory that a debtor can avoid a pre-petition transfer by a non-debtor of property that would later become property of the debtor's bankruptcy estate if the transfer were not made. In opposition, the Defendant advances a case with similar facts, *Gray v. Manklow (In re Optical Techs., Inc.)*, 252 B.R. 531 (M.D. Fla. 2000), *aff'd* 246 F.3d 1332 (11th Cir. 2001). In *Optical Techs*, consolidated Chapter 11 debtors sought avoidance under § 547(b), § 548(a),[9] and Florida fraudulent transfer law of pre-petition payments to former directors and officers. The defendants moved for summary judgment, asserting that the transfers had been made by non-debtor entities, and the claims were not property of the debtors' estates. The debtors countered that the non-debtor transferors were part of a *de facto* merger as adjudicated by a Florida

---

[9] Section 548(a) allows a trustee to avoid as a fraudulent a transfer of "an interest of the debtor in property."

10

court. Sitting for the bankruptcy court, the late Honorable Alexander L. Paskay granted summary judgment for the defendants, because the defendants were not parties to the state court action, and—

> [i]t follows that the Final Judgment which declared this so-called *de facto* merger cannot possibly be binding on [the defendants] or on the non-debtor entities…. Even assuming that the Final Judgment had effectively declared that all assets and liabilities of the two non-debtor entities which made the transfers are assets of these Debtors, the right to assert these claims could not be bestowed on these Debtors. This is for the simple reason that the payments by the non-debtors were made long before the effective date of this so-called "*de facto* merger."

*Id.* at 538 (quoting *Recomm Operations Inc. v. Vincens (In re Optical Techs., Inc.)*, No. 8:96-ap-00256-ALP, at ECF 160 (Bankr. M.D. Fla. Jul. 27, 2000)). The debtors appealed, contending that Judge Paskay committed reversible error by granting summary judgment when material issues of fact existed concerning the issue of *de facto* merger. The decision was affirmed by both the district court and circuit court of appeals without further discussion about whether the transfers would have been avoidable if the *de facto* merger were recognized.

The court shares Judge Paskay's sentiments that logic and equity dictate that a debtor should not be able to claim a retroactive interest in property transferred by a non-debtor; however, the court need not make this determination, because the Transfer was not for or on account of an antecedent debt *owed by the debtor before such transfer was made* as required by § 547(b)(2). "Section 547(b) is grammatically structured such that 'antecedent' modifies 'debt', and the compound concept 'antecedent debt' is in turn modified by the phrase 'owed by the debtor before the transfer was made.'" *Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006). There is no escaping the plain language of this subsection that the antecedent debt must have been incurred by the debtor before the transfer

11

was made. *Sigmon v. Royal Cake Co., Inc. (In re Cybermech, Inc.)*, 13 F.3d 818, 821-22 (4th Cir. 1994).

The Complaint alleges that the Transfer was made on account of an antecedent debt, and the court accepts this allegation as true; however, the Complaint does not allege that the antecedent debt was owed by the Plaintiff before the Transfer was made. "[A] debt is incurred when a debtor first becomes legally bound to pay." *Morrison v. Champion Credit Corp. (In re Barefoot)*, 952 F.2d 795, 799 (4th Cir. 1991) (quoting *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631, 632 (10th Cir. 1986)). When the merger of limit liability companies takes effect, "[t]he surviving entity has all liabilities of each merging entity." N.C. Gen. Stat. § 57D-9-43(a)(3) (2014). The Plaintiff could not have become liable on the Claims until the effective date of the merger on May 13, 2018, over two months after the Transfer. The Plaintiff failed to state a claim under § 547(b) upon which relief can be granted; now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1. The Rule 12 Motion be, and hereby is, granted with respect to the First Claim for Relief and the Third Claim for Relief;

2. The First Claim for Relief and the Third Claim for Relief contained within the Plaintiff's Complaint be, and hereby are, dismissed; and

3. The Rule 12 Motion be, and hereby is, denied with respect to the Second Claim for Relief.

**END OF DOCUMENT**